353 So.2d 152 (1977)
Peter STORER and Stuart W. Patton, As Co-Executors of the Estate of George B. Storer, Deceased, Appellants,
v.
Dorothy M. STORER, Appellee.
No. 74-1392.
District Court of Appeal of Florida, Third District.
November 29, 1977.
Rehearing Denied January 5, 1978.
*154 Patton, Kanner, Segal, Zeller, LaPorte & King, Miami, Spector & Tunnicliff, Tallahassee, for appellants.
Kelly, Black, Black & Kenny and William G. Earle, Miami, for appellee.
Before PEARSON, HAVERFIELD and NATHAN, JJ.
NATHAN, Judge.
The appellants, Peter Storer and Stuart W. Patton, as co-executors of the estate of the deceased husband, George B. Storer, seek review of a final judgment determining alimony, attorneys fees and costs, in an action for dissolution of marriage instituted by the wife, Dorothy M. Storer, appellee herein.
The record reflects that the parties were married in 1960; that the marriage was of 12 years duration; and that the wife was 74 years old at the time of the entry of the final judgment in 1974. As stated on the record by the trial judge,
"... the style of living which these parties accustomed themselves to boggles the mind."
A brief introduction to the facts in this case includes the following: the couple spent about 6 months of the year in their luxurious home on Indian Creek Island, Miami Beach, Florida. They spent the remaining months of the year in Wyoming on the Storer ranch in their substantial home there. The Storers also owned several guest houses and a golf course in Wyoming and property in the Bahamas. In New York City, there was a suite maintained for their exclusive use which they visited a few times each year. They had several servants, belonged to the best clubs, traveled in grand style and entertained lavishly.
During the course of the 12 year marriage, the parties owned several boats, at lways available. They owned a Lear jet-least one of which was a 108 foot yacht, and *155 all of which were named after Mrs. Storer. Captain and crew of 6 were always available. They owned a Lear jet and other planes. In fact, from the ranch in Wyoming, Mrs. Storer would fly her lady friends in one of the private planes to Denver for lunch every two or three weeks.
According to Mrs. Storer, her husband's net worth was in excess of $31,000,000.00. His tax returns indicated that he spent $450,000.00 a year in purchases with sales tax ramifications, about $70,000.00 in charitable contributions, and $20,000.00 in real estate taxes. There was evidence that Mr. Storer spent some $250,000.00 a year maintaining his private planes and boats, and it was estimated that his average yearly expenditures were over $600,000.00.
The marriage became irretrievably broken in 1971 when Mr. Storer met a nurse whom he decided to marry. He informed Mrs. Storer that he did not want to live with her any more, and he left her. After an attempted settlement in Florida with Dorothy Storer failed, Mr. Storer went to Wyoming and filed suit for divorce on April 21, 1972. Mrs. Storer was constructively served in Miami pursuant to a Wyoming long arm statute. She then proceeded to file a petition for dissolution of marriage in Dade County, Florida, on May 22, 1972. Although Mrs. Storer made no appearance in the Wyoming proceedings, on May 30, 1972, the Wyoming court granted Mr. Storer a divorce, and entered an order determining the property rights of Mrs. Storer. She then amended her complaint in the Dade County proceedings.
Mr. Storer was personally served in Dade County in January, 1973. He filed an answer and requested that the Wyoming divorce and alimony decree be given full faith and credit in Florida. A two and one half year jurisdictional dispute began. Subsequently, the trial judge entered an order denying the husband's motion to quash the Florida divorce proceedings, in which the court found that the wife was a domiciliary of Florida when the Wyoming proceedings took place, and concluded that the Wyoming decree was not entitled to full faith and credit insofar as it determined alimony and the property rights of the wife. On interlocutory appeal to this court, the order of the trial court was affirmed. See Storer v. Storer, 305 So.2d 212 (Fla. 3d DCA 1974); certiorari denied by Florida Supreme Court, 346 So.2d 994 (Fla. 1977); application for stay denied by United States Supreme Court, July 27, 1977.
The trial court held a hearing on the matters of alimony and attorneys fees and costs and entered the following final judgment which is the subject of this appeal:
FINAL JUDGMENT
* * * * * *
1. The wife should be and hereby is awarded lump sum alimony as follows:
(a) Two Million Two Hundred Sixty-One Thousand Dollars ($2,261,000.00); this sum shall be paid by George B. Storer to Dorothy Storer in monthly installments of $19,000.00 for a total of 119 months....
(b) The fee simple interest in all real property located at 26 Indian Creek Island, Dade County, Florida ... together with all furniture, furnishings and contents therein... .
2. The lump sum alimony awarded herein is decreed to be vested in Dorothy Storer as of the date of this final judgment. It is not subject in any way to the death, change in economic status, or remarriage of either party. It is the specific direction of this Court that neither the death of George B. Storer nor the death of Dorothy Storer prior to the full payment of the vested lump sum alimony awarded herein shall have any effect on the judgment of this Court. In the event of the death of George B. Storer prior to full payment of the sum herein awarded, his estate shall be chargeable with the balance of the payments. Likewise, in the event of the death of Dorothy Storer prior to the full payment of the sum herein awarded, George B. Storer shall continue to make payments to the estate of Dorothy Storer.
3. The issue of what constitutes a reasonable attorney's fee for the wife's attorneys *156 is not before the Court. Rather the issue is what amount, if any, of a reasonable attorney's fee for the wife's attorneys should be borne by respondent. The Court determines that $200,000.00 be paid by the respondent, George B. Storer, ... as fees for the wife's attorneys.
* * * * * *
In October, 1974, this appeal was taken to challenge the provisions of the final judgment. In November, 1975, George Storer died. Pursuant to motion for substitution, Peter Storer and Stuart W. Patton, as co-executors of the estate of George B. Storer, were substituted as parties appellant in this court. The following questions are raised by the appellants in this appeal:
(1) Was the cash lump sum award to the wife of $2,261,000.00 arbitrary and excessive, and did it constitute an abuse of discretion?
(2) Did the court, in making and entering the final judgment, err in therein providing that the periodic payments to be made to the wife should survive the death of either party?
(3) Did the court err in awarding to the wife the home which was in the sole name of the husband, together with furnishings and fixtures, when no special equity was claimed or proven?
(4) Did the court err in light of the award to the wife in requiring the husband to pay $200,000.00 in attorneys fees?
Before we address these questions specifically, we note that as a general rule, in appellate proceedings, the trial court's findings and conclusions are shielded from attack and are clothed with the presumption of validity. Even if the appellate court disagrees with the trial court and would have reached a different conclusion had it been in the shoes of the trial court, barring a lack of substantial evidentiary support for the trial court's findings, the judgment should be affirmed. Herzog v. Herzog, 346 So.2d 56 (Fla. 1977). Also see Pross v. Pross, 72 So.2d 671 (Fla. 1954), and Baker v. Baker, 299 So.2d 138 (Fla. 3d DCA 1974).
The scope of our review in cases such as this was sharply dealt with by the Florida Supreme Court in Shaw v. Shaw, 334 So.2d 13 (Fla. 1976). In that case, it was held that an alimony award by a trial judge is a matter of fact, the determination of which is committed to the trial judge and not the appellate court; and that a modification by this court of the alimony and property awards in the trial court's judgment amounted to a re-evaluation of the evidence and substitution of this court's judgment for that of the trial court. As stated at page 16,
"It is clear that the function of the trial court is to evaluate and weigh the testimony and evidence based upon its observation of the bearing, demeanor and credibility of the witnesses appearing in the cause. It is not the function of the appellate court to substitute its judgment for that of the trial court through re-evaluation of the testimony and evidence from the record on appeal before it. The test ... is whether the judgment of the trial court is supported by competent evidence. Subject to the appellate court's right to reject `inherently incredible and improbable testimony or evidence,' it is not the prerogative of an appellate court, upon a de novo consideration of the record, to substitute its judgment for that of the trial court."
The opinion further states that while the district court of appeal or the Florida Supreme Court might have reached a different financial balance and divided the assets of the parties some other way, it was not error or an abuse of discretion for the trial court to arrive at the result it reached. Shaw v. Shaw, page 17.
The record in the case now before us reflects that the trial judge held a one-day hearing on the questions of alimony and property. The wife's undisputed testimony and evidence as to the parties' standard of living and financial status, including balance statements and income tax returns, was the only evidence before the trial judge, from which he could make his findings.
Turning now to the questions presented on appeal, the first concerns whether the lump sum award of alimony to the wife in *157 the amount of $2,261,000.00, was arbitrary, excessive and an abuse of discretion. We think not.
The courts of Florida follow two criteria in determining the amount of alimony, if any, to be awarded: (1) the husband's ability to pay, and (2) the needs of the wife, taking into consideration the standard of living shared by the parties to the marriage. Pfohl v. Pfohl, 345 So.2d 371, 375 (Fla. 3d DCA 1977), and cases cited therein. Lump sum alimony is justified only where it serves a reasonable purpose, such as rehabilitation, or where the marriage's duration or the parties' financial position would make such an award advantageous to both. Calligarich v. Calligarich, 256 So.2d 60 (Fla. 4th DCA 1971); Jones v. Jones, 330 So.2d 536, 538 (Fla. 1st DCA 1976); Cann v. Cann, 334 So.2d 325, 328 (Fla. 1st DCA 1976). Lump sum alimony may be made payable in installments. Cann v. Cann, supra; Section 61.08, Florida Statutes (1975). The wife's needs and the husband's ability to pay are still the correct equation to follow. Calligarich v. Calligarich, supra.
Where, as here, the husband's financial condition is such as to enable him to respond to a gross allowance of alimony without financial hardship, it may be the better solution to grant such an allowance when all other equitable considerations justify it, and thereby avoid vexatious and endless litigation. Yandell v. Yandell, 39 So.2d 554 (Fla. 1949). Lump sum alimony may be the proper and better practice in a situation such as this where the divorce is an absolute divergence of the lives of the parties, there being no children involved. Yandell v. Yandell, supra, at page 556. Also see Goode v. Goode, 76 So.2d 794 (Fla. 1954); Bradley v. Bradley, 327 So.2d 253 (Fla. 4th DCA 1976).
The record before us contains ample, substantial, competent evidence to support the amount of the lump sum alimony award. The wife presented evidence of the husband's net worth, in excess of $31,000,000.00; annual salary of $60,000.00; annual dividends of $880,000.00; annual interest income of $28,000.00; annual tax-exempt income of $450,000.00; plus the homes and other property owned by the husband, and the parties' standard of living during the marriage. From the particular facts of this case, we find no doubt that the trial judge properly characterized the financial status of the parties, contemplating the present and future needs of the wife, and the present ability of the husband to pay, when he entered the judgment. The record clearly demonstrates that the scale of living shared by the couple during marriage, the ability of the husband to respond and the needs of the wife were sufficient to justify the trial court's findings and the amount of the award. We find no abuse of discretion and affirm the lump sum alimony award. Ortiz v. Ortiz, 211 So.2d 243 (Fla. 3d DCA 1968); Baker v. Baker, supra. We further conclude that the arrangement for installment payments of the lump sum award finds legal, substantial and competent support in the record. See Pross v. Pross, supra.
The appellants' second question is whether the court erred in providing in the final judgment that the alimony payments to the wife should survive the death of either party. Again, we think not.
Lump sum alimony awards have long been upheld in Florida courts. Yandell v. Yandell, supra; Pross v. Pross, supra; Zohlman v. Zohlman, 235 So.2d 532 (Fla. 3d DCA 1970); Fishman v. Fishman, 245 So.2d 258 (Fla. 3d DCA 1971); Langston v. Langston, 257 So.2d 625 (Fla. 3d DCA 1972). By definition, an award of lump sum alimony vests in the recipient at the time of the final decree, and is not subject to defeasance or modification. Latta v. Latta, 135 So.2d 443, 444 (Fla. 3d DCA 1961); Keller v. Belcher, 256 So.2d 561 (Fla. 3d DCA 1971).
Just as it is within the trial court's discretion to order an award of lump sum alimony, Ortiz v. Ortiz, supra, it is within the court's discretion to determine what alimony arrangement would be most equitable under the circumstances of the case, Bosem v. Bosem, 279 So.2d 863 (Fla. 1973), and that discretion includes ordering lump sum alimony to be payable in installments. Pross *158 v. Pross, supra; Cann v. Cann, supra. Even where payable in installments, however, the lump sum is a fixed amount vested in the wife, and the husband's obligation to pay it has every element of finality. Yandell v. Yandell, supra, page 556. The award in this case is consistent with Section 61.08, Florida Statutes (1973), which provides in pertinent part that,
"... the court may grant alimony to either party, which alimony may be rehabilitative or permanent in nature. In any award of alimony, the court may order periodic payments or payments in lump sum or both... ." (emphasis supplied)
We hold that Dorothy Storer's right to receive lump sum alimony in equal monthly installments became fixed and final under the final judgment.
The third question on appeal is whether the court erred in awarding to the wife as lump sum alimony, the home on Indian Creek Island, which was owned solely by the husband before and during the marriage, together with all of his furniture and fixtures, when no special equities were shown by the wife. We find that reversible error has been committed in this regard. While there is authority for the proposition that the wife can be awarded property belonging solely to the husband, such an award is proper only in certain circumstances.
Lump sum alimony should be awarded only where some special equities require it. Yandell v. Yandell, supra. The burden of proof is on the wife to sustain a special equity and to establish to the exclusion of a reasonable doubt that she had acquired a legal or equitable title in the property. Singer v. Singer, 262 So.2d 731 (Fla. 3d DCA 1972). No special equity has been shown by Mrs. Storer.
On the contrary, the record reflects that Mr. Storer was the sole owner of the home and its contents prior to and during the marriage. Mrs. Storer failed to demonstrate that she made any financial contribution to the purchase or maintenance of the Indian Creek home, or to any of the other properties owned by Mr. Storer. Nor did she demonstrate that she contributed such personal services to the marriage as to warrant an award of the home to her as lump sum alimony. The record also fails to reflect a showing of great need for the home. Neither the briefs, supplements to the briefs, oral argument nor our extensive research, has led us to a case which stands for the proposition that a trial judge may award to one spouse as lump sum alimony, property belonging solely to the other spouse, absent a showing of special equities or great need. See Bezanilla v. Bezanilla, 65 So.2d 754 (Fla. 1953); Reid v. Reid, 68 So.2d 821, 822 (Fla. 1953).
We hold that a trial judge cannot order the husband to give to the wife as lump sum alimony, specific real property or personal effects of which he is the sole owner, unless there is a showing of special equities or great need. While it was proper in this case for the court to award the wife a specified amount of cash as lump sum alimony, it was improper to order the husband to divest himself of this solely owned property as an award of lump sum alimony. To hold otherwise would permit the court to make a division of a spouse's solely owned property by way of lump sum alimony. Accordingly, we find that the award to the wife of the husband's real and personal property as lump sum alimony constitutes error, and we reverse that portion of the final judgment.
The fourth question on appeal is whether the court erred in requiring the husband to pay $200,000.00 of the wife's attorneys fees. We find no error in the award of attorneys fees.
A hearing was held on the issues of attorneys fees and costs. Expert testimony was presented on behalf of both parties. The trial court, in making its determination of the portion of the wife's attorneys fees to be paid by the husband, stated that, "... the record should contain a full and fair reflection of the Court's feelings on all of the matters." It was then determined that a reasonable fee for the wife's attorneys would be $400,000.00, and that it would be reasonable for the husband to pay $200,000.00, or one half of that amount.
*159 We find that this award of attorneys fees is not so excessive as to constitute an abuse of discretion. The expert testimony established the value of the case, and the amount of the award was within the bounds of the experts' recommendations. It is apparent from the lengthy record that the case involved such difficulty and complexity, and required such skill of counsel as to make the fee reasonable. See Lodding v. Dunn, 251 So.2d 560 (Fla. 3d DCA 1971); and compare Cummings v. Cummings, 330 So.2d 134 (Fla. 1976).
Two other questions were raised on appeal. In our opinion, they are without merit as they are matters which were previously raised and resolved in the interlocutory appeal in this cause.
The final judgment herein appealed is affirmed in all respects except the award of the Indian Creek Island home and its contents to the wife as lump sum alimony, which is reversed.
Affirmed in part and reversed in part.